# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GEORGE PANZECA, JR.** | **CIVIL ACTION NO:** |
| **VERSUS** | **COMPLAINT** |
| **SAFEPORT INSURANCE CO.** | **JUDGE** _____ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### COMPLAINT

NOW INTO COURT, through undersigned counsel, comes the Petitioner, GEORGE PANZECA, JR., a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana, who avers that:

### THE PARTIES

1.

Made Defendant herein is SAFEPORT INSURANCE COMPANY, hereafter referred to as "SAFEPORT."

2.

SAFEPORT is a foreign insurer domiciled in the State of Florida which is authorized to do and doing business in the Parish of Jefferson, State of Louisiana.

3.

At all relevant times herein, the Petitioner is and was the owner of the land and improvements bearing municipal number 32 Metairie Court, Metairie, Louisiana 70001, which was insured by a Homeowners Policy No. LAS192063703 issued by the Defendant SAFEPORT for the policy period of June 1, 2021 through June 1, 2022, referred to herein as "the Policy."

1

## JURISDICTION AND VENUE

4.

This Court has diversity jurisdiction over the parties pursuant to 28 USC § 1332(a), inasmuch as SAFEPORT is a foreign insurer, domiciled in the State of Florida, the Petitioner is a citizen of Louisiana, and the amount in dispute is over $75,000.00.

5.

Venue is proper in this Parish inasmuch as the property owned by the Petitioner and insured by the Defendant is situated in Jefferson Parish, the Petitioner is domiciled in Jefferson Parish, and the Defendant issued and delivered the insurance policy at issue herein in Jefferson Parish.

## DAMAGE FROM HURRICANE IDA

6.

On August 29, 2021, Hurricane Ida made landfall near Port Fourchon, Louisiana and proceeded Northeast, striking Jefferson Parish and causing widespread damage from its high winds and wind-driven rain.

7.

Hurricane Ida caused significant damage to the Petitioner's home located at 32 Metairie Court in Metairie, Louisiana, 70005, referred to herein as "the Petitioner's home," which was insured by the Homeowner's policy issued to the Petitioner by SAFEPORT on August 29, 2021.

8.

The damage Hurricane Ida caused to the Petitioner's home and consequent covered expenses included but was not limited to

A)      damage to the exterior and interior of the home, including the roof;

B)      damage to personal property owned by the Petitioner in the home;

C)      loss of the ability of the Petitioner to use the home as his residence or for storage;

D)      loss of income and/or earnings;

E)      extra expenses;

F)      storage fees.

## THE SAFEPORT POLICY

9.

The Defendant issued a homeowners policy number LAS 192063703 to the Petitioner which provided coverage for damage to the Petitioner's home caused by wind and rain, inter alia.

10.

The SAFEPORT policy had a policy period from June 1, 2021 through June 1, 2022.

11.

The SAFEPORT policy effective June 1, 2021 provided the following limits of liability:

"SECTION I – PROPERTY COVERAGE

| | |
|---|---|
| A.  Dwelling | $366,000 |
| B.  Other Structures | $36,600 |
| C.  Personal Property | $183,000 |
| D.  Loss of Use | $73,200 |

SECTION I - DEDUCTIBLES

| | |
|---|---|
| Wind/Hail Deductible (1% of Cov. 4) | $3,660 |
| All Other Peril Deductible | $2,500 |
| Equipment Breakdown | $500 |

12.

The SAFEPORT policy provides therein that "Coverage is provided where Limits of Liability and/or Premium is shown."

3

13.

The Petitioner is the named insured under the policy.

14.

The insured location covered by the policy is defined as 32 Metairie Court, Metairie, Louisiana 70005, which is the Petitioner's home, as defined in the policy as the "Resident Premises."

15.

Pursuant to the terms of the SAFEPORT policy, the Defendant agreed to timely and promptly pay or reimburse the Petitioner for:

A)    property damage to his dwelling caused by a covered peril, i.e., a named storm;

B)    damage to other structures on the residence premises cause by a named storm;

C)    damage to or loss of personal property caused by a named storm;

D)    loss of use of the resident premises caused by a named storm;

E)    the increased costs incurred due to the enforcement of ordinances and laws regulating construction, demolition, remodeling, removal, etc.; and

F)    Other coverages set forth in the policy.

16.

Additionally, according to the endorsement entitled "Specified Additional Amount of Insurance for Coverage A – Dwelling – La." of the SAFEPORT policy, the Defendant SAFEPORT agreed to provide:

A)    an additional amount of 25% of the Coverage A limit of liability for the resident premises;

B)    coverage of that portion of the resident premises which is damaged at replacement cost without deduction for depreciation, with materials of like kind and quantity; or

4

C)    the right to disregard the aforementioned replacement cost loss settlement provisions and make a claim for loss of the resident premises on an actual cash value basis plus any additional liability on a replacement cost basis.

## NOTIFICATION TO DEFENDANT SAFEPORT IN THE AFTERMATH OF HURRICANE IDA AND MISREPRESENTATIONS OF POLICY PROVISIONS

17.

The Petitioner promptly contacted representatives of the Defendant concerning damage to his home from Hurricane Ida days after the storm.

18.

On or about September 8, 2022, the Petitioner sent the Defendant a proof of loss due to Hurricane Ida in the form of a Xactimate estimate of damage from Hurricane Ida prepared by Florida Certified Contractors, LLC, referred to herein as "FCC", in the amount of $431,599.30.

19.

A representative of IAT Insurance Group, acting on behalf of SAFEPORT, acknowledged receipt and acceptance of the Petitioner's proof of loss by a letter of September 20, 2022.

20.

On October 14, 2021, an adjuster hired by the Defendant, Abdul Aljammal of Brush Country Claims, inspected the Petitioner's home on behalf of SAFEPORT with the Petitioner's consent.

21.

According to the Xactimate estimate prepared by the aforementioned adjuster from Brush Country Claims, the damage to the Petitioner's home from Hurricane Ida amounted to $7,080.33 after application of the deductible.

22.

In correspondence dated October 16, 2021, a representative of IAT Insurance Group on behalf of SAFEPORT informed the Petitioner that, based on an inspection of Brush Country Claims, Ltd., its agent, and its agent's Xactimate estimate, the Petitioner was entitled to a net amount of $7,080.33 under his policy, which amount was tendered by a check from the IAT Insurance Group, No. 45452, dated November 11, 2021.

23.

According to its aforementioned letter of October 16, 2021, IAT Insurance Group on behalf of SAFEPORT INSURANCE COMPANY calculated the amount of the tender on the basis of the Xactimate estimate of October 14, 2021 by Abdul Aljammal, as follows:

SETTLEMENT TOTAL

Coverage A – Dwelling:
    Replacement Cost                          $9,879.99
    Deductible                                ($3,660.00)

    Net Claim Payment – Dwelling:        $6,219.99

Coverage B – Other Structures:
    Replacement Cost                          $860.34

    Net Claim Payment – Other Structures    $860.34

24.

A comparison of the Xactimate estimate of Brush Country Claims, Ltd. of October 14, 2021 with the Xactimate estimate of September 5, 2022 by FCC ("the FCC estimate") reveals that Brush Country Claims, Ltd. rendered an inadequate estimate to decrease the amount owed to the Petitioner, as more particularly explained below.

6

25.

The Xactimate estimate of Brush Country Claims, Ltd., hereafter referred to as the "Brush estimate," calls for the removal and replacement of three non-identified tiles and the detachment and resetting of 8.15 square feet of tile without identifying the existing tiles or the replacement tiles and without regard to whether the new tiles would be compatible with what is on the roof.

26.

The adjuster who prepared the Brush estimate failed to follow the customary and standard practice of the industry of first identifying the existing tile, Ludowici Spanish tile, and then determining what comparable tile could replace it.

27.

According to the terms of the policy, the insured is entitled to replacement of the damaged tiles with tiles of like kind and quality.

28.

Additionally, the adjuster who prepared the Brush Country report failed to properly identify the extent of damage and scope of the repair work, inasmuch as the Ludowici tile is not a product suitable for individual tile repair.

29.

The adjuster who prepared the Brush claims report also failed to take into account the fact that wherever there is damage to the tiles on a particular slope of the house, all of the tiles on that slope would have to be replaced due to the fact that the tiles would be damaged in the course of the work.

30.

Also, because the profiles and nail patterns have to match in order to affix the individual

tiles to the roof, all of the tiles on a particular slope would have to be replaced.

31.

There is a waste factor in the installation of Ludowici Spanish tile, since the tile is easily broken. The FCC estimate took that factor into account, while the Brush estimate did not.

32.

The Brush estimate provided for the ridge/hip/rake cap of the original roof to be detached and reset but failed to include the encapsulated stringers to fasten the tile.

33.

The Brush estimate failed to include estimates for the valleys, flashing, chimney flashing, flashing-pipe jack, and exhaust cap, all of which were provided for in the FCC estimate.

34.

The Brush estimate also failed to include a 10% waste factor for the drip edge and the copper valley, which was included in both the FCC estimate.

35.

The Brush estimate failed to include an estimate for the house wrap (air/moisture barrier), gutters and downspouts, priming and painting the gutter, disconnecting and connecting the water meter and water heater in order to replace the siding, pick-up and delivery fees, a forklift to remove tile and debris, a forklift to load and unload tile, plywood and other implements to protect fencing, landscaping, trees, neighboring property and driveway from debris, a portable toilet, and the cost of the project supervisor on site, among other items.

36.

The Brush estimate also provides for replacement of the roof ridge/hip/rake cap with materials other than Ludowici materials, which would decrease the value of the roof, diminish its

appearance, be incompatible with Ludowici tiles, and would compromise the integrity and value of the roof.

37.

The Brush estimate is not consistent with the terms of the policy, which entitle the insured to the replacement of the old tiles with materials of like kind and quality.

38.

The Brush estimate also makes no allowance for removal and replacement of any roofing felt, which is also necessary to maintain the integrity of the roof and protect the interior of the home.

39.

The appraiser for Brush Country Claims, Ltd., his supervisors and representatives of the Defendant knew or should have known of the inadequacies and omissions of his estimate but nevertheless represented to the Petitioner that their suggested repairs would be adequate to maintain the appearance and integrity of his roof, which they knew or should have known to be false.

40.

The Defendant made its unconditional tender of November 11, 2021 to the Petitioner based upon the inadequate and misleading estimate of Brush Country Claims, Ltd. when it knew or should have known of the inadequacies and omissions of that estimate.

41.

The receipt of the Petitioner's estimate from FCC in September of 2022 alerted or should have alerted the Defendant to the fact that the Brush estimate was inadequate.

42.

Instead, the Defendant failed to re-examine the property, investigate further, revise its estimate, or inform the Petitioner as to why further investigation and supplementation of the estimate was unnecessary.

43.

Despite the fact that the FCC estimate revealed the numerous inadequacies, inconsistencies, and omissions of the Brush estimate, the Defendant failed to tender any additional amounts to the Petitioner.

44.

Despite the fact that the Defendant never disputed coverage for the damage to Petitioner's roof, it failed to make any additional tender to the Petitioner after receipt of the FCC estimate.

45.

The Petitioner performed all of the conditions, covenants, and promises required to be conformed in accordance with the terms and conditions of the policy.

## COUNT I:  BREACH OF CONTRACT

46.

The Petitioner re-alleges and re-avers and incorporates herein by reference all of her previous allegations herein.

47.

As set forth above, the Defendant entered into a contract of insurance with the Defendant that provides coverage for, *inter alia*, property damage, damage to personal property, and reimbursement for debris removal, repairs to the property, expenses incurred to protect and preserve the property, etc. as pled herein.

48.

The Petitioner has performed all of the conditions, covenants, and promises required to be performed in accordance with the terms and conditions of the policy.

49.

The Defendant has agreed and is legally and contractually required to reasonably investigate the loss, provide a reasonable and timely coverage determination, and promptly compensate the Petitioner for all covered losses at replacement value.

50.

According to Louisiana law and its policy, the Defendant is required to conduct a reasonable, adequate, and diligent investigation of any claims made by the Petitioner.

51.

The Defendant has agreed that coverage is owed for the Petitioner's losses arising out of Hurricane Ida and in fact has made a tender in compensation for Petitioner's claims for damage from Hurricane Ida, although inadequate, in partial compensation for those losses.

52.

The damage to the Petitioner's home exceeds the policy limits for his dwelling.

53.

Notwithstanding the Defendant's promises and legal and contractual requirement to pay, the Defendant has failed to pay an amount sufficient to repair or replace the Petitioner's dwelling.

54.

As a direct result of the breaches of contract by the Defendant, the Petitioner has and will continue to incur substantial losses and damages arising out of his inability to adequately repair his home, as well as attorneys' fees and costs, expert fees and costs, mitigation efforts, storage and other costs and related expenses.

## COUNT II:  NEGLIGENCE

### 55.

The Petitioner repeats, re-alleges, and incorporates by reference each and every allegation contained in the paragraphs above.

### 56.

The Defendant SAFEPORT owes the Petitioner a duty of care under the terms and conditions of the SAFEPORT policy and Louisiana law.

### 57.

The Defendant breached the duties owed to the Petitioner by failing to make a just, adequate, and timely payment on the claims submitted by the Petitioner under the policy for loss and damage the Petitioner sustained as a result of a covered peril under the policy.

### 58.

As a direct and proximate result of the breaches by the Defendant, the Petitioner has and will continue to incur substantial loss and damage, as well as attorneys' fees and costs, experts' fees and costs, mitigation and other costs and related expenses.

## COUNT III:
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING – VIOLATIONS OF LA. R.S. 22:1973

### 59.

The Petitioner re-alleges and re-avers and incorporates by reference each and every allegation contained in the paragraphs above.

### 60.

La. R.S. 22:1973(A) provides that:

> "An insurer, including but not limited to a foreign line and surplus line insurer, owes a duty to his insured of good faith and fair

dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or a claimant, or both. An insured who breaches these duties shall be liable for any damages sustained as a result of the breach."

61.

La. R.S. 22:1973(B) provides, in pertinent part:

"Any one of the following acts, if knowingly committed or performed by an insurer, constitute its breach of the insurer's duties as imposed by subsection A:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

\*    \*    \*    \*    \*    \*

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

(6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause."

62.

The Defendant's conduct was and continues to constitute a breach of the Defendant's duty of good faith and fair dealing in the following particulars, among others:

A)    Failing to adjust the Petitioner's claims fairly and promptly for damages due to Hurricane Ida;

B)    Failing to make a reasonable effort to pay a reasonable amount to its insured for damages due to Hurricane Ida within sixty (60) days;

C)    Failing to reasonably investigate and evaluate the true amount of the Defendant's damages for damages due to Hurricane Ida and failing to reassess its initial estimate in light of the information contained in the FCC estimate;

D)      Failing to timely make an unconditional tender of the undisputed amounts of the Petitioner's expenses incurred for covered expenses, including but not limited to for debris removal, repairs to the property, storage, the expense of protecting the property from further damage, and failing to pay for the cost of replacing Petitioner's roofing tiles with tiles of like kind and quality, all as provided under the terms of the policy the Defendant issued to the Petitioner for damages due to Hurricane Ida;

E)      Unreasonably delayed the resolution and payment of claims made by the Petitioner under the policy for damages due to Hurricane Ida after the Defendant had sufficient information of the nature and value of the claim to constitute satisfactory proof of loss;

F)      Misrepresenting the terms and provisions of its policy relating to replacement with like kind and quality;

G)      Failing to provide Petitioner with any reasonable or justifiable basis for withholding policy benefits from him;

I)      failing to perform and submit to the Petitioner a complete estimate of the damage to Petitioner's home from Hurricane Ida;

J)      misrepresenting to the Petitioner that its agent's estimate was a complete and competently prepared estimate of the damages to his home after Hurricane Ida.

63.

As a direct and proximate result of the bad faith of the Defendant, the Petitioner has and will incur substantial loss and damage, as well as attorneys' fees and costs, expert fees and costs, expense of mitigation and other costs and expenses in excess of the jurisdictional limit of this Court of $75,000.00.

64.

La. R.S. 22:1973(C) provides that:

> "In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or $5,000.00, whichever is greater.  Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings."

65.

The Petitioner is entitled to penalties under La R.S. 22:1973(C) for the Defendant's acts and omissions as set forth herein.

### COUNT IV:
### VIOLATIONS OF La. R.S. 22:1892

66.

The Petitioner re-alleges and re-avers and incorporates by reference each and every allegation contained in paragraphs the preceding of this Complaint.

67.

La. R.S. 22:1892(A)(1) provides that:

> "A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:1811, 1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damages claims made in accordance with this Paragraph."

68.

La. R.S. 22:1892(A)(4) provides that:

> "(4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of their claim."

69.

The Petitioner has submitted satisfactory proof of loss to the Defendant for its claimed

losses and damages under the SAFEPORT policy, inasmuch as he has

A)     Notified the Defendant of his losses from Hurricane Ida within less than a week of its occurrence;

B)     Allowed the adjustors and representatives of the Defendant access to his premises each time that they requested access;

C)     Timely forwarded to the Defendant all receipts, estimates, and reports as he received them;

D)     Has made himself available by phone and email; and

E)     Has responded to every request and inquiry of the Defendant.

70.

Despite the fact that the Defendant has received satisfactory proof of loss pursuant to Louisiana law, the Defendant has not made any written offer to settle the Petitioner's property damage claims within thirty days, as required by La. R.S. 22:1892(A)(4).

71.

The failures of the Defendant to pay the expenses incurred by the Petitioner which are expressly covered by the policy, the failure to pay more than a minimal amount in satisfaction of the Petitioner's claims despite the fact that the Defendant received notice of inadequacies and omissions of the Brush estimate and the true cost of the Petitioner's damages as stated in the FCC estimate in September of 2022, and the failure to make any written offer to settle the Petitioner's property damage claim are unreasonable, arbitrary, and capricious.

72.

As a direct and proximate result of the Defendant's failures, the Petitioner has and will continue to incur substantial losses and damages, as well as attorneys' fees and costs, expert fees and costs, mitigation expenses, and other costs and expenses in excess of the jurisdictional limit

of this Court of $75,000.00.

73.

La. R.S. 22:1892(B)(1) provides:

> B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (S)(1) and (4) of this Section, respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) of this Section when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings."

74.

In addition to claimed losses and damages as set forth above, the Petitioner seeks penalties under La. R.S. 22:1892 for the Defendant's failures, actions, and omissions, as set forth below:

A)    Failing to adjust the Petitioner's claims fairly and promptly for damages due to Hurricane Ida;

B)    Failing to make a reasonable effort to settle claims with its insured for damages due to Hurricane Ida within thirty (30) days of receipt of a satisfactory proof of loss;

C)    Failing to reasonably investigate and evaluate the true amount of the Defendant's damages for damages due to Hurricane Ida, despite the fact that the FCC estimate revealed to the Defendant the inadequacies of the Brush estimate upon which it relied;

D).    Failing to timely make an unconditional tender of the actual undisputed amounts of the Petitioner's expenses incurred for covered expenses, including but not limited to for debris removal, repairs to the property, storage, and the expense of protecting the property from further damage, all as provided under the terms of the policy the Defendant issued to the Petitioner for damages due to Hurricane Ida;

E)    Unreasonably delayed the resolution and payment of claims made by the Petitioner under the policy for damages due to Hurricane Ida after the Defendant had sufficient information of the nature and value of the claim to constitute satisfactory proof of loss;

F)    Misrepresenting the terms and provisions of its policy relating to coverages of at issue;

G)    failing to perform and submit to the Petitioner a complete estimate of the damage to Petitioner's home from Hurricane Ida.

<u>**COUNT V:**</u>
<u>**BAD FAITH BREACH OF CONTRACT – LA. CIVIL CODE ART. 1997**</u>

75.

The Petitioner re-alleges and re-avers and incorporates by reference all of the allegations of the preceding paragraphs herein.

76.

La. Civil Code Art. 1997 provides that:

> "An obligor in bad faith is liable for all of the damages, foreseeable or not, that are a direct consequence of his failure to perform."

77.

The Defendant is an obligor in bad faith under Civil Code Art. 1997 as a result of its acts and omissions as set forth herein.

18

78.

As a direct and proximate result of the acts and/or omissions by the Defendant as alleged herein, the Petitioner has and will continue to incur substantial loss, damages, attorneys' fees, costs, expert fees and costs, expenses of mitigation and other related costs and expenses in excess of the jurisdictional limit of this Court of $75,000.00.

79.

The Defendant is liable under Civil Code Art. 1997 for all of the Petitioner's damages, foreseeable or not, that are a direct consequence of the Defendant's failure to perform.

## <u>COUNT VI:</u>
## <u>BREACH OF FIDUCIARY DUTIES</u>

80.

The Petitioner re-alleges and re-avers and incorporates by reference herein each and every allegation contained in the preceding paragraphs herein.

81.

The Defendant owes the Petitioner a high fiduciary duty to discharge its policy obligations to its insured in good faith pursuant to Louisiana law and jurisprudence.

82.

The Defendant breached its fiduciary duties owed to the Petitioner by engaging in the conduct as alleged herein.

83.

As a direct and proximate result of the actions and omissions by the Defendant, the Petitioner has and will continue to incur substantial loss and damage, as well as attorneys' fees and costs, expert fees and costs, expenses of mitigation, and other costs and expenses in excess of the jurisdictional limit of this Court of $75,000.00.

## COUNT VII:
## DECLARATORY JUDGMENT RELIEF UNDER 28 USC § 2201

### 84.

The Petitioner re-alleges and re-avers and incorporates by reference herein each and every preceding allegation herein.

### 85.

The Declaratory Judgment Act, 28 USC § 2201, allows the Federal Court to declare the rights and other legal obligations of any interested party seeking such declaration in an actual controversy within its jurisdiction.

### 86.

The Petitioner seeks a declaratory judgment pursuant to 28 USC § 2201 and Rule 57 of the Federal Rules of Civil Procedure to determine an actual, substantial case or controversy which is real and immediate regarding the liability of the Defendant to the Petitioner for withholding and failing to pay policy benefits and other acts and omissions as alleged herein in violation of its policy provisions and Louisiana law.

### 87.

As set forth above, the Defendant promised, *inter alia*, to insure the Petitioner for losses falling within the coverage defined in the policy.

### 88.

As a result of the conduct of the Defendant, the Petitioner has and will continue to suffer injury and damages.

### 89.

As a further result of the conduct, acts and omissions of the Defendant, the Petitioner has and will continue to incur attorneys' fees, costs, expert fees and costs, cost of mitigation and other

costs and expenses as a result of the acts and omissions of the Defendant as stated above.

90.

The Petitioner has performed all of the conditions, covenants, and promises required to be performed in accordance with the terms and conditions of the policy and the request of the representatives of the Defendant herein.

91.

A dispute has arisen between the Petitioner and the Defendant, insofar as the Petitioner contends that he is entitled to be promptly and fully paid for the amount submitted to the Defendant for losses and damages due to Hurricane Ida, including but not limited to covered losses and damages to her dwelling, and personal property and expenses covered under the policy, including but not limited to debris removal, repairs, and other covered expenses according to the policy, as well as penalties and attorneys' fees, all costs, expert fees and costs, and expenses of mitigation.

92.

The Defendant has failed to promptly and fully pay the Defendant the amounts to which he is entitled under the policy.

93.

An actual controversy exists between the Petitioner and the Defendant regarding the Defendant's duties under the policy and Louisiana law to fully and promptly pay the Petitioner for the loss and damage he incurred.

94.

As a direct and proximate result of the acts, omissions, and breaches described herein, the Petitioner has suffered losses, damages, and expenses to be proven at the time of trial.

95.

The Petitioner prays for trial by jury of all issues.

## **PRAYER FOR RELIEF**

WHEREFORE, the Petitioner, GEORGE PANZECA, JR., prays for judgment herein against the Defendant, SAFEPORT INSURANCE COMPANY, providing him with declaratory and monetary relief and in an amount sufficient to compensate him for:

A)    Compensatory, general and all consequential losses and damages and all expenses due him as the named insured under the policy.

B)    The full amount of policy benefits owed to the Petitioner under the policy for losses and damages sustained by him as a result of Hurricane Ida;

C)    Statutory attorneys' fees and penalties pursuant to La. R.S. 22:1973 and La. R.S. 22:1892;

D)    A declaratory judgment and relief under 28 USC § 2201, et seq;

E)    Attorneys' fees and costs;

F)    Expert fees and costs;

G)    Other costs and expenses, including the cost of mitigation and investigation resulting from the Defendant's failure to properly complete the assessment and adjustment of loss and failure to pay the full amount of the loss.

H)    All other relief as demanded herein; and

I)    All other general and equitable relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

The Petitioner herein demands a trial by jury on all issues tryable to a jury.

Respectfully submitted,

ROBERT ANGELLE (#2495)
3231 North I-10 Service Road West
Suite 210
Metairie, LA 70002
Tel: (504) 836-5990
Fax: (504) 836-5040
Email: bobangelle@yahoo.com